Good morning, Your Honors. May it please the Court. Quinn Denver representing Mr. Adams. I would like to try to reserve three minutes. Mr. Adams filed a pro se opening brief and reply brief, and then I was appointed and I filed a supplemental opening brief. I intend to only address the issues in my brief. I didn't. Just to – I don't quite understand the position of your brief. You refer to it as supplemental opening brief. I'm sorry. I did a supplemental reply brief. Supplemental reply brief. If I said it, yeah. And that becomes pro se. There's a pro se opening, pro se reply, and then there's a supplemental reply brief that I did. Yes. Okay. I just want to be sure on that because it has something to do with waivers and if it's a supplemental reply brief. And that was my understanding is that was what was asked for. But we'll get to that, I'm sure. I guess we will. I want to just address the ones that were in the reply brief. As to the other ones, we will rely on the pro se briefing. First of all, I'd like to talk about the question of whether there was a procedural default. As the Court knows, the superior court denied the insufficiency of the evidence claims, except for one, which were raised on habeas corpus without reaching the merits because it held that they could have been raised on appeal and were not, citing In re Dixon, an old California Supreme Court case. That is a bar in this Court only if the state courts consistently apply the Dixon rule. And in Bennett v. Mueller, the Court established a three-step procedure for determining that. First step is that the state has to raise it as affirmative defense. Then the burden shifts to the defendant to assert specific factual allegations demonstrating that it is not consistently applied, including citing to authority demonstrating inconsistent application, which I think is important. If the defendant does that, the ultimate burden shifts to the state to show consistent application. In this case, the state did raise an affirmative defense. We then cited to authority demonstrating inconsistent application of the Dixon rule by the state courts. We cited seven United States district court decisions which found inconsistent application. We believe that that in itself shifts the burden then to the state. The state in none of those cases was able to show the ultimate or meet the ultimate burden of showing consistent application, and we don't think they can do it in this case. So then we get to the issue that wasn't raised in the opening brief. It was raised in your supplemental reply brief, and I know this is technical. We've got to deal with it. The issue is an issue. How can we say that the issue wasn't waived when we have legions of cases saying, unless it's in the opening brief, it's waived? Your Honor, if the Court is saying that this should turn, and whether I call this a supplemental opening brief or a supplemental reply brief, I just don't think that's the case at all. I'm saying should this case turn on our legion of cases that say, unless it's raised in the opening brief, it's waived, how do we get around that? I understand the point, and it's a good point, and maybe we made a mistake by not ordering you to give a complete rebriefing, but we deal with what we have before us. Well, Your Honor, if that has not been raised by the State, if the Court wants to go that way, then I want an opportunity to brief it to see if there's any exceptions to that, because I think you have a question, really, that kind of manifests injustice. You have a pro per person who's trying to deal with a very difficult, very difficult procedural question. I understand all that, and I understand if he had opened it. He asks for counsel. He doesn't get it. Yeah. He finally gets counsel. Counsel raises it, presents it before the Court, and then it turns out he forfeited. And counsel? I'm hoping that there is something in the Court's precedent that would say that isn't the way we do it. That's what I'm asking. That's what I'm asking. Well, Your Honor, it hasn't been raised before. I'd like the opportunity to brief it. That's all. If you think that's the problem, then I think I ought to be able to brief that question. I would ask you to. Let me do it. Yeah. What about the Ninth Circuit case, our case, Prossman v. Lepiler, that applied the Dixon rule? I've got to find that, Your Honor. I remember this. I understand. I've got to find that. I think the question of the — I don't find it. I'd have to check it out, Your Honor. Right. I'm not aware of that. I don't think there was any — I'm fairly confident there was never any finding of adequacy, so it may not have been raised. But we did apply it, I believe, in that case. Well, it may have been applied because there's a number of district court cases that say we're going to apply this rule because they're not challenging the adequacy or the consistent application part of the adequacy of that. So I think if the Court applied it without addressing this particular requisite for procedural bar because it wasn't raised, I don't think it would be precedent. But I don't — I'm not aware of that case. It doesn't ring a bell. All right. So that's our position on procedural default. I would like to talk about one of the insufficiency of the evidence claims that he made, and that was the claim that he did not — there's insufficient evidence to show that Mr. Adams personally discharged a firearm. And this is a point that was not made in the brief. I don't think it's waived. That the State court did not decide that or adjudicate it on the merits. They just denied that claim solely on procedural grounds. Therefore, the Anti-Terrorism Act does not apply, 2254D, and the Court would review that de novo. But that's a point I would like to make. If you look at the evidence on that, there was evidence that there were possibly three people in the car. One was Mr. Adams. One was the co-defendant, Mr. Trotter. And the third was another one of these Nogales Crips by the name of Kenyatta Hudson. His was the only fingerprint that was found in the car. And, in fact, the district attorney conceded that there may have been a third person in the car. He says, there were possibly another person. Do we suspect? We know who it was. Yeah, we do. He also conceded to the prosecutor, to the jury, this is an argument, that no one really knew who fired any of the guns. And he says that. Kennedy, There were three of them in the car, correct? There were three. It appears there were three guns used. That's correct. That's my point. There were three of them and three guns were used, correct? That's correct. But the other point, Your Honor, is what he did concede is that there could have been a driver who did not use a gun and two in the back seat. The only testimony where the firing came was that there were flames seen coming out of the rear passenger side. And he conceded that. What you're saying, then, is somebody was like Rory Rogers, a two-fisted shooter? No. As he said, the gun could have jammed, they could have run out of it. The district attorney conceded that that could have happened in his argument. But the evidence does show that Adams was holding ammunition that was similar to ammunition that was fired from a gun. That could have been associated with one of the guns. But the fact that he had ammunition that could have been associated with it does not prove that he discharged it. And I think the key is the evidence of powder burns or evidence of shooting. I was going to deal with that, Your Honor. First of all, his prints were not found on the guns. The second thing was there was no characteristic gunshot residue found on either the front or back of either of his hands. And it also was clear that he had not washed his hands because they found noncharacteristic GSR on the hands. So on his clothes there was characteristic, the characteristic GSR, the kind that shows that you're near a gunshot. It was found on, I think, a shirt and a sweatshirt. But the criminalist who testified here said that that would be placed on there just from being within the car when a bunch of guns were fired. There would be a lot of GSR going up. There's some evidence. You're just indicating it's weak. I'm indicating I don't believe it meets the Jackson v. Virginia standard. I don't think that there's credible evidence from which a rational trier of fact can find beyond a reasonable doubt that he fired this gun. There may be on these other questions whether he's involved in this, but the fact that he personally discharged the gun I think is just supposition. It's not – there's no evidence that he did that. It's just, well, could have been more than that. The jury could say, yeah, we decided to do that. And in fact, the prosecution – But they did find mucus on his hands. No, that's co-defendant. Is that co-defendant? Yes. Yes. And the prosecutor said, you know, you could find that the driver was driving and the two guys in the back, or one guy in the back, did all the shooting. And therefore, you could convict whoever you thought was the driver of everything except the personal discharge. And I think once you concede you don't know who fired the guns and it tells the jury you could actually find that, you pretty well should have a reasonable doubt and a rational trier of fact should have a reasonable doubt. Any questions? I'd like to save the rest of my time, if I could.  Thank you. Thank you. Good morning. May it please the Court. Carrie Ritchie-Muller appearing on behalf of Respondent. This short court should deny habeas relief because appellant's claims, with the exception of the sufficiency of the evidence claim of the gang enhancement, are all procedurally barred, and in addition, all the claims are meritless. Now, Dixon, in this case, the California courts imposed the Dixon bar to bar most of appellant's claims raised in this case. That rule is an adequate and independent state procedural bar, which bars appellant's claims in this case because he does not demonstrate cause or prejudice to get around the default or a fundamental miscarriage of justice. With respect to the adequacy of the procedural bar, the Supreme Court's recent decision in Walker v. Martin is instructive on this point. And in that case, the Supreme Court discussed and found and made clear that a discretionary state procedural bar can serve as an adequate bar to Federal habeas review. And it's only when a State court has applied the ground infrequently, unexpectedly, or freakishly, or exercised its discretion in a surprising or unfair manner, that the State procedural rule should be found inadequate. In this case, the Dixon bar has been in existence for over 60 years. It the Court's discretion to deny appellant's claims were not surprising or unfair. Though the exceptions to the Dixon rules became what has been described as undefined and imprecise, in 1993, the State of California State Supreme Court decided Harrison Clark to reestablish the limited exceptions to that procedural rule. An appellant cites no evidence of inadequacy or irregular application of the Dixon rule as of October 26, 2007, which is when the rule, when the bar occurred in this case, when the default occurred, which is when the opening brief was filed. The cases that appellant relies on look to cases where the bar occurred in the 1990s to 2000. And in addition, some of those cases also found that the bar was inadequate because the rule was discretionary. And again, based on Walker v. Martin, that is no longer a per se reason to find a the bar to be inadequate. Several district courts have found the rule to be adequate and independent, as Respondent cited in the brief. And lower courts would also benefit from this Court's guidance on the issue, given the fact that there is no current Ninth Circuit precedent addressing the adequacy of the Dixon rule. What about Plyler? Are you familiar with that case? That was the district court's opinion was cited in the Respondent's brief. I am not familiar with the Ninth Circuit's decision with respect to this issue. So unless the Court has any further questions regarding the adequacy of the Dixon rule, I'll move on to the claim regarding sufficiency of the evidence. What's the position of the State on whether or not this issue's been waived because it wasn't entered in the opening brief, wasn't raised in the opening brief? Under normal rules of appellate procedure, the issue would be waived because, Respondent, we have not had an opportunity to brief the issue in reply, and basic rules of appellate procedure indicate that you cannot raise a new argument in your reply brief. This is not this issue was discussed in the district court, so it's not as though appellant was unaware that this procedural bar existed and was a problem for him. He says it was discussed in the district court? Yes, it was discussed in the district court. So we've got a problem here where we have an opening brief by the pro se, and then a very sharp brief by the State, and a motions panel or some group looked at it and said, no, we've got to have more on this. So we asked for a different, a new reply brief. Now, maybe we should have asked for it to be rebriefed in total, but we didn't. It puts the defendant in a little adverse position because, obviously, we were saying, you're not properly represented. Then we tell him you can only give half the cake, and the other half is left out. It's a little troubling if we follow that. But it is the position, I take it, of the State that we cannot consider issues not raised in the opening brief. No, this Court can consider the issue, but again, it does, it puts all parties at a disadvantage because given the burden-shifting tests in Bennett v. Mueller, the State hasn't had an opportunity to go through the record and appellant, and again, neither in the district court or here on appeal has produced, satisfied his burden of production to then shift the burden to the State as to the adequacy and the application of Dixon. If we had looked at it now and know what we know, we might have asked for a complete rebriefing on the case so that we have it fully before us. As of now, we're not in a position to really attack, no matter how it comes out, we're not really in a position to make very critical determinations which were not raised by the pro se in the opening brief. Have there been any cases of which you're aware where we have made exceptions based on those types of factual context? I am not aware of any cases in which an exception is found, but I do believe, again, based on the decision in Walker v. Martin, the Court can find that the Dixon bar is adequate using that decision because it is very instructed on this issue of whether the rule is discretionary. So regardless of whether it's been fully briefed or raised, given the fact that Walker v. Martin says that discretionary State procedural rules can serve as an adequate bar, and again, the Dixon rule has been in existence for over 60 years, I think that this Court can still reach the merits of that decision. Thank you. With respect to the sufficiency of the evidence of the firearm enhancement that was raised by opposing counsel, the evidence in this case that Adams fired a weapon was compelling. The jury found that he acted as a principal in the offense, and that is supported by significant evidence. There were three firearms involved in this shooting that were found nearby the vicinity of the defendants. And while opposing counsel raises the possibility, and the prosecutor discussed this in closing argument, that there may have been a third party involved, Mr. Hudson, the only evidence that he was in that vehicle is one fingerprint that was left by Mr. Hudson. There was no evidence that he was found in the vicinity of the shooting after it occurred. There was really no testimony at all with respect to Mr. Hudson. The only evidence was the stipulation that the parties made that his fingerprint was found in the vehicle. And while it's possible he was involved, given the other evidence involved in this case, it's not particularly reasonable that he was a third shooter. Like I said, there were three firearms involved in the shootings that were both found in the vicinity of where Adams and co-defendant Trotter were found. Adams left two .40-caliber bullets in the back of the patrol vehicle, which he surreptitiously tried to hide between the plexiglass and the back seat. And he also had motive to commit this shooting. They – there was evidence that this was an ongoing gang war between the two rival gangs, and the shooting occurred in front of the secondary hangout of the rival gang, the Elm Street Bloods. In addition, the gunshot residue found in this case was in the suspect's vehicle and also on Adams' clothing, and in particular, on both cuffs of his sweatshirt, the right and left pocket of the sweatshirt, and the left breast of his sweatshirt and the upper breast of the T-shirt. So while there isn't any gunshot residue on the front or back of his hands, the cuffs of the sweatshirt is pretty compelling evidence that he would have fired a gun. When you take it in addition – in conjunction with all of the other evidence in this case. In addition, the – both defendants fled from the scene and, under suspicious circumstances, jumping the fence of one yard, and then they were – there were two – the officer saw two individuals exiting the suspect vehicle, one of whom had the shotgun in his hand. And then as he drove around the corner and looked down the alley, he saw that one of – the second individual going into an adjacent backyard, and that – next to that backyard is where they found the .40-caliber handgun used in the – in the shooting. So, again, while Officer Hosmer could not definitively identify either defendant as being the person who exited the suspect vehicle, Trotter was found in the backyard where the shotgun and the .38-caliber were found. And then Adams was found on the corner nearby that second house where the second suspect was seen entering the backyard. So given the overwhelming evidence in this case, it is compelling, and the jury's finding on all charges are – is supported by substantial evidence. Unless the Court has any further questions, Respondent is prepared to submit. Roberts. Thank you. Mr. Pember. Thank you, Your Honor. On the question of the insufficiency evidence, the Attorney General points to the fact that there was motive, there was consciousness of guilt, there was flight. All of that, and the issue I'm raising here, the personal discharge, that doesn't prove anything. All that would prove is he was involved maybe as a driver while the other people did the shooting. But if he was a driver, he wouldn't have gunshot residue all over the front of his clothing. I mean, you understand that with the sweatshirt sleeve, you could – and I'm doing this with the robe for the record – you pull it down over your hand, and then that way you don't leave fingerprints on the gun. Well, except he doesn't have any gunshot residue anywhere in his hands. I understand, but it could also be that – why would he have it on the cuffs of his sweatshirt and on the front? There's a whole – there's a whole fog of gunshot residue that's going throughout the car, where there's 8 to 10 shots. That's having a sub on the front? I'd have to check exactly there. I assume that what she says is correct on that. But again, I don't think that proves that. But I'd like to get back to the Dixon rule. On the one hand, the Attorney General says that they would like to have a ruling  I don't want to deprive them of the right to respond to what I raised in the reply brief. I would ask the Court to consider getting briefed, further briefing. Treat mine as an opening brief on that issue and get further briefing on it and find what happened. Now, one thing I want to make clear, though, is that there's this talk about the timing of – this is the 2009 habeas corpus. In Dennis v. Brown, the district court, Judge Fogel, looked at 200 Supreme Court cases from 1980 to 2003 and found that Dixon was not consistently applied. There has been – that's by the California Supreme Court. There's been no decision by any state court that's changed that rule in any way. So I think the presumption should be if it was inconsistently applied for 23 years, nothing's changed on that at all. And I think at least we have made enough to shift the burden over to the state to prove otherwise. We have to make specific factual allegations citing authorities that hold that there was inconsistent application. And we've got six to seven district court judges who looked at that, found it's inconsistent application, and the state never met the ultimate burden of proving that it was. Unless the Court has some further questions. Thank you. We thank both counsel for the arguments. Well done.
judges: Mahan, Wallace, Bybee